**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES VENUSTI,<br><br>      Plaintiff,<br><br>    v.<br><br>HORIZON BLUE CROSS AND BLUE SHIELD OF NEW JERSEY,<br><br>      Defendant. | Civil Action No. 20-714 (SDW) (LDW)<br><br>**OPINION**<br><br>June 7, 2021 |

**WIGENTON,** District Judge.

Before this Court is Defendant Horizon Blue Cross and Blue Shield of New Jersey's ("Horizon") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(e) and (f). Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Horizon's Motion is **GRANTED**.

**I.  FACTUAL & PROCEDURAL HISTORY[1]**

James Venusti ("Plaintiff") is a New Jersey resident approaching age 69. (*See* SMF ¶¶ 1, 13.) Plaintiff owns and operates an automobile repair shop, Ramsey Autobody & Collision, Inc.

---

[1] This Court cites to Horizon's Statement of Undisputed Material Facts (D.E. 26-2) and Plaintiff's Statement in Response thereto (D.E. 29-3) collectively as the parties' "SMF." Unless otherwise noted, the facts as stated are undisputed. Page references to Horizon's exhibits in Docket Entry Number 26-4 are to the CM/ECF pagination automatically generated in the upper-righthand corner. In addition, this Court sympathizes with Plaintiff's medical history and claims experience with Horizon as expressed in his certification submitted in opposition to Horizon's Motion for Summary Judgment. (*See* D.E. 29-2.) However, because Plaintiff did not file a supplemental statement of undisputed material facts as permitted under Local Civil Rule 56.1(a), this Court only considers additional statements in Plaintiff's opposition brief that contain proper record citations. *See Est. of Lewis v. Cumberland Cty.*, No. 16-3503, 2019 WL 7047220, at *4 (D.N.J. Dec. 23, 2019) (citing Fed. R. Civ. P. 56(c)(1)(A), 56(e); *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011)).

1

("Ramsey"), in Upper Saddle River, New Jersey. (SMF ¶ 2.) At all relevant times, Ramsey did not have more than twenty (20) full-time employees. (SMF ¶ 3.) Horizon issued a small employer health benefits plan (the "Plan") to Ramsey in 2011, which Plaintiff was enrolled in during the period at issue. (SMF ¶¶ 6, 11.) The parties concede that the Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and provided for two levels of internal appeals to Horizon in the event of an adverse benefit determination. (SMF ¶¶ 7, 12.)

In July 2017, when Plaintiff reached age 65, he did not enroll in Medicare Part B despite his eligibility.[2] (SMF ¶ 14.) Sadly, in 2019, Plaintiff was diagnosed with throat cancer and received treatment, which resulted in claims for benefits under the Plan. (SMF ¶ 31.) Throughout his cancer treatment, Plaintiff was enrolled in Medicare Part A, but had not enrolled in Medicare Part B. (SMF ¶ 33.) Horizon ultimately paid Plaintiff's claims as a secondary insurer, such that it paid amounts *above* what Medicare Part B would have covered had Plaintiff enrolled. (SMF ¶ 35.) Accordingly, Horizon sent Plaintiff multiple explanations of benefits ("EOBs") stating that if he did not have coverage under Medicare Part B, amounts shown as "Medicare Paid" would be Plaintiff's responsibility. (SMF ¶ 36.) Plaintiff disputes that Horizon paid his claims in accordance with the Plan's terms. (*See* D.E. 29-3 ¶¶ 35–36.)

The Plan provides that for "Medicare Eligibility by Reason of Age" ("Medicare Eligibility Provision"), the Medicare as Secondary Payor ("MSP") rules "[g]enerally appl[y] to employer groups with 20 or more employees." (SMF ¶ 20 (quoting D.E. 26-4, Ex. 1 at 116).) In relevant part, the Plan's MSP section states:

> **The following sections regarding Medicare may not apply to the Employer's Policy. The Employee must contact his or her Employer to find out if the Employer is subject to [MSP] rules.**

---

[2] As noted below in Horizon's correspondence with Plaintiff, the parties do not appear to dispute that "Medicare Part A" provides free hospital insurance to individuals 65 and older, while "Medicare Part B" provides medical insurance for a monthly fee. (SMF ¶ 26; D.E. 26-4, Ex. 4 at 172); *see also Furlong v. Shalala*, 238 F.3d 227, 229 (2d Cir. 2001).

> **If the Employer is NOT subject to such rules, this [MSP] section does not apply to the Employee, in which case, Medicare will be the primary health plan and this Policy will be the secondary health plan for Covered Persons who are eligible for Medicare.**

(SMF ¶ 19 (quoting D.E. 26-4, Ex. 1 at 116).)  In addition, it is undisputed that Horizon sent Plaintiff a letter on December 7, 2017, which stated the following:

> Our records indicate that you are 65 + years of age and may be eligible for Medicare.  Most people age 65 or older who are citizens or permanent residents of the United States; and have worked at least 10 years are eligible for free Medicare hospital insurance (Part A) and may enroll in Medicare medical insurance (Part B) by paying a monthly premium. . . .
>
> If you have not applied for Medicare, your benefits under your Horizon [ ] plan will be reduced by amounts that could have been covered under Medicare; and you may be left with substantial un-reimbursed medical expenses.

(SMF ¶ 19 (quoting D.E. 26-4, Ex. 4 at 172).)

In October 2019, after Plaintiff received EOBs, counsel wrote to Horizon twice to appeal the claims determinations on Plaintiff's behalf.  (SMF ¶¶ 37, 39.)  Counsel's October 1, 2019 correspondence did not include an authorization from Plaintiff allowing Horizon to disclose Plaintiff's health information to his lawyer.  (SMF ¶ 38.)  Although counsel's subsequent letter dated October 16, 2019 included Plaintiff's signed authorization, it was not on Horizon's approved, federally compliant form.  (SMF ¶¶ 39–40.)  On October 30, 2019, Horizon advised Plaintiff in writing that it could not respond to counsel's inquiry and requested that Plaintiff complete and return Horizon's approved authorization form to its "Privacy Team."[3]  (SMF ¶¶ 42, 44 (citing D.E. 26-4, Ex. 10 at 282).)  Plaintiff never sent Horizon a signed authorization on its approved form (SMF ¶ 46), and the parties dispute the effectiveness of the authorization submitted

---

[3] Horizon's October 30, 2019 correspondence also reiterated its December 7, 2017 letter to Plaintiff.  (SMF ¶ 45.)

with counsel's October 16, 2019 letter. (*See* D.E. 29-3 ¶ 41.)

As a result of the foregoing, Plaintiff commenced this action on January 22, 2020, alleging that Horizon breached the terms of the Plan under ERISA by denying his medical benefits (Count I). (D.E. 1 ¶¶ 20–23.) In the alternative, Plaintiff maintains that Horizon breached its ERISA-imposed fiduciary duties (Count II).[4] (*Id.* ¶¶ 24–27.) On February 5, 2021, Horizon filed the instant motion for summary judgment. (D.E. 26.) All briefing was timely filed. (D.E. 29, 32.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its

---

[4] Specifically, Plaintiff asserts that Horizon failed to (i) inform him of preconditions to coverage under the Plan; (ii) consider the equities in making his benefits determinations; (iii) review or respond to Plaintiff's appeal in a timely fashion; and (iv) provide counsel with requested documentation. (D.E. 1 ¶ 26.) Plaintiff also alleges that Horizon accepted premiums for coverage it refused to render, misrepresented Plaintiff's coverage, and put its financial interests before Plaintiff's by depriving him of Plan benefits. (*Id.*)

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

As a preliminary matter, this Court rejects Horizon's contention that Plaintiff's failure to exhaust administrative remedies is detrimental to his claims. (*See* D.E. 26-1 at 14–18.) Typically, a claimant who contests a benefit determination must exhaust internal administrative procedures delineated under the plan before resorting to the court. *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). Horizon admits, however, that "ERISA does not itself contain an exhaustion requirement." (D.E. 26-1 at 16.) Rather, "[e]xhaustion is a judicially created 'nonjurisdictional prudential' requirement . . . that plaintiffs must satisfy for ERISA benefits claims but not for claims arising from violations of ERISA's substantive provisions, such as breach of fiduciary duty claims." *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) (internal citations omitted). Because "ERISA['s] exhaustion requirement is an affirmative defense," Horizon has the burden to establish Plaintiff's failure to exhaust. *See id.*

Here, it is undisputed that the Plan "provided for two levels of internal appeals to Horizon following an adverse benefit determination." (SMF ¶ 12.) Although Horizon's moving brief details the parties' correspondence and its decision to decline adjudication of Plaintiff's appeals for lack of valid authorization, it does not point this Court to specific language in the Plan stating that two appeals were *required* prior to bringing this action.[5] (*See generally* D.E. 26-1.) Because "the appropriate question is what remedies are required *under the* [P]*lan*," Horizon has not met its burden by failing to specify Plan language regarding exhaustion of internal appeals. *See Karpiel v. Ogg, Cordes, Murphy & Ignelzi*, LLP, 297 F. App'x 192, 193–94 (3d Cir. 2008) (vacating grant of summary judgment in defendants' favor for failure to exhaust where defendants "fail[ed] to provide the [c]ourt with any information regarding the exhaustion requirements of the [p]lan").

---

[5] Horizon also neglected the issue of exhaustion in its reply to Plaintiff's opposition arguments. (*Compare* D.E. 29 at 26, *with* D.E. 32.) In addition, from October 30, 2019 until the filing of this lawsuit on January 22, 2020, the record is void of any indication that Horizon made further attempts to request documentation or provide Plaintiff with its approved authorization form. (*See generally* D.E. 26-4.)

### B.  ERISA Standard of Review

Next, the parties dispute the proper standard of review of Horizon's benefits determination. ERISA provides that "a participant or beneficiary" may bring suit "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Courts review actions brought under 29 U.S.C. § 1132(a)(1)(B) challenging a denial of benefits *de novo*, "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010). The Third Circuit has made clear that if a plan gives the administrator "discretion in interpreting its terms and making benefit decisions," the denial of benefits is reviewed for abuse of discretion, which is equivalent to the arbitrary and capricious standard. *Id.* at 792–93, n.6.[6] An abuse of discretion occurs if an administrator's decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 792 (quoting *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). Furthermore, "[t]here are no 'magic words' [that] determin[e] the scope of judicial review of decisions to deny benefits, and discretionary powers may be granted expressly or implicitly." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (citing *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991)). If a plan is ambiguous, it will be "construed in favor of the insured." *Id.*

This Court finds that the Plan expressly, or at minimum, implicitly affords Horizon the discretionary authority to review and make benefits determinations. (*See* D.E. 26-4, Ex. 1 at 29 (defining "**Discretion / Determination / Determine**" as Horizon's "right to make a decision or determination . . . . [to] be applied in a reasonable and non-discriminatory manner"); *id.* at 109

---

[6] Accordingly, this Court refers to the "arbitrary and capricious" and "abuse of discretion" standards interchangeably.

(defining "Allowed Charge" as an "amount that is not more than the usual or customary charge for the service or supply *as determined by Horizon*" (emphasis added)); *see, e.g.*, *Whitford v. Horizon Blue Cross Blue Shield of New Jersey*, No. 17-2637, 2018 WL 2422020, at *4 (D.N.J. May 29, 2018). Indeed, Plaintiff does not cite Plan language in support of his position that the *de novo* standard of review should apply. (*See* D.E. 29 at 8–11.)

Similarly, Plaintiff's argument that Horizon's noncompliance with ERISA's claim procedure warrants *de novo* review is unavailing. (*See id.* at 10.) "*De novo* review is appropriate[] when . . . 'there simply is no analysis or reasoning to which the Court may defer.'" *Becknell v. Severance Pay Plan of Johnson & Johnson & U.S. Affiliated Cos.*, 644 F. App'x 205, 211 (3d Cir. 2016) (quoting *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295 (3d Cir. 2002)); *Rizzo v. First Reliance Standard Life Ins. Co.*, 417 F. Supp. 3d 479, 488–89 (D.N.J. 2019). Notwithstanding Horizon's purported failure to decide Plaintiff's appeals or timely furnish the administrative record to counsel (D.E. 29 at 10), its actions "do not constitute a failure to exercise discretion, as [to] warrant[ ] *de novo* review."[7] *See Becknell*, 644 F. App'x at 212. For example, Horizon provided multiple EOBs in 2019 stating that Plaintiff would be responsible for amounts recorded as "Medicare Paid" if he was not enrolled in Medicare Part B. (SMF ¶ 36; D.E. 26-4, Ex. 7 at 194, 205, 221, 229, 234, 243, 254.) Moreover, Horizon acknowledged Plaintiff's appeals and reiterated its December 7, 2017 letter, which noted that Plan benefits would be "reduced to what Medicare would have allowed, had [ ] [Plaintiff] enrolled in Medicare Part B coverage." (SMF ¶ 45 (quoting D.E. 26-4, Ex. 10 at 282).) For these reasons, this is not the case where Horizon entirely failed to disclose Plaintiff's

---

[7] This Court also notes it is undisputed that Horizon acknowledged counsel's October 2019 inquiries and specified that it required Plaintiff's authorization on a Horizon-approved form before it would act. (SMF ¶¶ 37–40, 42–44; D.E. 26-4, Ex. 10 at 282.) Indeed, Horizon's request falls under its purview to "establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant" in accordance with federal regulations under ERISA. *See* 29 C.F.R. § 2560.503-1(b)(4).

claims analysis until after the instant lawsuit was filed. *See, e.g.*, *Becknell* 644 F. App'x at 211–12 (holding that a plan administrator's failure to decide an administrative appeal in a timely fashion did not warrant *de novo* review). Accordingly, this Court reviews Horizon's benefits determination under the abuse of discretion standard.

### C. Horizon's Benefits Determination

This Court holds that Horizon did not abuse its discretion in deciding Plaintiff's benefits under the Plan. It is undisputed that Plaintiff owned and was employed by Ramsey, a business with less than 20 full-time employees. (SMF ¶¶ 2–3.) In evaluating and paying Plaintiff's claims, Horizon did not consider Medicare as a secondary insurer because the Medicare Eligibility Provision under the Plan's MSP section "[g]enerally applies to employer groups with 20 or more employees" (D.E. 26-4, Ex. 1 at 116), which did not include Ramsey. (*See* SMF ¶ 3.) In this regard, the Plan's Medicare Eligibility Provision is consistent with both federal and state law. *See Glatthorn v. Indep. Blue Cross*, 34 F. App'x 420, 422 (3d Cir. 2002) (stating that the Medicare as Secondary Payer statute "does not apply to group health plans used by employers with fewer than 20 employees") (citing 42 U.S.C. § 1395y(b)(1)(A)(ii)); N.J.A.C. 11:4-28.5 (providing that group plans "shall not reduce benefits on the basis that . . . [a] person is or could have been covered under another plan, *except* with respect to Part B of Medicare") (emphasis added). Here, Horizon acted in accordance with the Plan's explicit terms which provide that if "[Ramsey] is "NOT subject to [the MSP] rules," Medicare would act as Plaintiff's primary health plan and Horizon's policy would become "the secondary health plan."[8] (*See* D.E. 26-4, Ex. 1 at 116.)

Plaintiff avers that he was "required" to enroll in Medicare Part B and that Horizon failed

---

[8] Furthermore, the Plan clearly states that the MSP section "may not apply to the Employer's Policy" and provides that "[t]he Employee must contact his or her Employer to find out if the Employer is subject to [MSP] rules." (D.E. 26-4, Ex. 1 at 116.) The fact that Plaintiff owned Ramsey does not negate this obligation under the Plan.

9

to inform him of this obligation as well as the consequences of non-enrollment. (*See* D.E. 29 at 12–16.) These arguments miss the mark because the Plan did not require Plaintiff's enrollment in Medicare. (*See* D.E. 26-4, Ex. 1.) Indeed, Horizon informed Plaintiff how the Plan would operate if he did not voluntarily elect to enroll in Medicare. Nearly two years before his unfortunate cancer diagnosis, Horizon warned Plaintiff that if he did not "appl[y] for Medicare," his benefits under the Plan "will be reduced by amounts that could have been covered under Medicare" and he "may be left with substantial un-reimbursed medical expenses." (SMF ¶ 19 (quoting D.E. 26-4, Ex. 4 at 172); *see id.* ¶¶ 13–14, 31.) Moreover, Horizon's EOBs regarding Plaintiff's 2019 medical claims echoed the same consequence as related to Medicare Part B specifically. (D.E. 26-4, Ex. 7 at 194 (warning that if Plaintiff's "coverage does not include Medicare Part B, the amount shown as Medicare Paid is also the [Plaintiff's] responsibility"); *id.* at 205, 221, 229, 234, 243, 254.) Accordingly, under the Plan's unambiguous terms, Horizon acted as Plaintiff's "secondary insurer" and paid his claims in amounts *above* what Medicare Part B would have paid had he enrolled. (*See* SMF ¶ 35.) In doing so, Horizon did not abuse its discretion. Thus, Horizon's Motion for Summary Judgment is **GRANTED** with respect to Count I.

### D. Breach of Fiduciary Duty[9]

Finally, this Court agrees with Horizon that Plaintiff's breach of fiduciary duty claim is duplicative of Count I. (*See* D.E. 26-1 at 19–21.) Relevant here, "it is improper to assert a breach of fiduciary claim when it is akin to a claim to enforce the terms of a benefit plan." *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 607 (D.N.J. 2011). The Third Circuit has stated that a breach of fiduciary duty claim "is actually a claim for benefits" where its resolution "rests upon an interpretation and application of an ERISA-regulated plan rather than . . . ERISA" itself.

---

[9] Horizon concedes that the *de novo* standard of review applies to Plaintiff's alternative breach of fiduciary duty claim. (D.E. 32 at 20.)

10

*Harrow*, 279 F.3d at 254. Notably, plaintiffs cannot avoid the legal framework under 29 U.S.C. § 1132(a)(1)(B) by seeking identical relief under 29 U.S.C. § 1132(a)(3). *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 298–99 (D.N.J. 2013).

Under Count II, Plaintiff seeks "equitable, 'make-whole' relief" for "incurred losses and harm, separate, apart, and in addition to his right to benefits" under the Plan. (D.E. 1 ¶ 27.) Importantly, Plaintiff does not explain—in his Complaint or opposition brief—how such "make whole" relief under Count II differs from the medical claims reimbursement he seeks under Count I. (*See* D.E. 1 at 6; D.E. 29 at 18–25.) Instead, the core of Plaintiff's fiduciary duty claim is the dispute over whether Horizon accurately determined and communicated his benefits under the Plan. (*See generally* D.E. 1; D.E. 29.) Accordingly, Horizon's Motion for Summary Judgment as to Count II is **GRANTED**. *See, e.g.*, *Lipstein*, 296 F.R.D. at 298–99 (finding that "[p]laintiffs have not distinguished the gravamen of their [breach of fiduciary duty] claim" from their claim under 29 U.S.C. § 1132(a)(1)(B) and that "it is [p]laintiffs' burden to do so in opposition to a motion for summary judgment").

### IV. CONCLUSION

For the reasons set forth above, Horizon's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

                                         ___/s/ Susan D. Wigenton_____
                                         **SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
            Parties